IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

|  |  |  |
|---|---|---|
| Angela N. Allen | ) | Civil Action No: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| Lazy T, LLC., and Larry Dexter Harmon | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT

COMES NOW Plaintiff, Angela N. Allen, by and through her undersigned counsel, and files this her Complaint.

## PARTIES

1. Plaintiff is a citizen and resident of Watauga County, North Carolina.

2. Upon information and belief, Defendant Lazy T, LLC. (hereinafter "Lazy T") is a North Carolina limited liability company, which operates a business located in Caldwell County, North Carolina.

3. Upon information and belief, Defendant Larry Dexter Harmon (hereinafter "Harmon") is a citizen and resident of Caldwell County, North Carolina.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1367.

5. This Court has personal jurisdiction because Defendants conduct business in Caldwell County, North Carolina, which is located within this judicial district.

6. Venue is proper in this judicial district because Defendants have substantial business contacts in this district and because the unlawful acts alleged herein occurred in Caldwell County, North Carolina.

## ADMINISTRATIVE PROCEDURES

7. Plaintiff timely filed a charge with the U. S. Equal Employment Opportunity Commission ("EEOC") on January 31, 2019, alleging sexual harassment (Charge No. 430-2019-00834); Plaintiff timely filed a second charge with the EEOC on March 8, 2019, alleging retaliation (Charge No. 430-2019-01250).

8. On October 31, 2019, Plaintiff was issued notices of Right to Sue from the EEOC on both Charges, entitling her to commence an action under Title VII of the Civil Rights Act of 1964 within 90 days of receipt of those Notices.

9. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this matter.

## COVERAGE ALLEGATIONS

10. At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and Section 701(b) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

11. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

12. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

13. At all times hereinafter mentioned, Plaintiff was an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and Title VII of the Civil Rights Act of 1964.

14. At all times hereinafter mentioned, Plaintiff was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

## FACTUAL ALLEGATIONS

15. At all times relevant to this Complaint, Plaintiff was employed by Lazy T. as an Operations Manager.

16. At all times relevant to this Complaint, Harmon was the owner and principal managing member of Lazy T. Harmon exercised day to day control over Lazy T. and its employees. Harmon made the decisions regarding the hiring and firing of employees of Lazy T. Harmon set the work schedules for all employees of Lazy T., including the

Plaintiff. Harmon supervised all employees of Lazy T., assigned their work duties and made all decisions regarding the payment of wages to employees of Lazy T.

17. Harmon hired Plaintiff in June 2017 to work as an Operations Manager for Lazy T. Plaintiff reported directly to Harmon.

18. Lazy T is a trucking company whose trucks carry cargo and freight throughout the United States. Upon information and belief, Lazy T. employed approximately 20 employees at all times relevant to this Complaint.

19. Throughout her employment, Defendants classified Plaintiff as an "independent contractor."

20. Defendants failed to pay Plaintiff overtime compensation for all hours worked in excess of forty hours per work week, as is required by the FLSA.

21. Defendants paid Plaintiff a weekly wage of $600.00 per week. In approximately September 2018, Plaintiff's weekly wage was increased to $800.00 per week. However, if Plaintiff worked less than 40 hours in a work week at the worksite of Lazy T., her weekly wage was reduced. Defendants never compensated Plaintiff for work performed at her home or otherwise performed by her away from the worksite of Lazy T.

22. Throughout her employment, Plaintiff worked approximately 45 to 55 hours each work week.

23. Defendants exercised total control over Plaintiff during her employment. Defendants scheduled all of Plaintiff's work.

24. Defendants set Plaintiff's work hours, including requiring Plaintiff to work on weekends. Defendants established work schedule for Plaintiff at its work site was 8am to 5pm, Monday to Friday. Plaintiff was also on call every night during the work week and on weekends and worked approximately 1 to 3 hours from home each evening.

25. Defendants kept no record of the hours worked by Plaintiff from home or work performed away from the worksite of Lazy T.

26. Plaintiff duties were clerical in nature. She would review, file and process all paperwork received from United Parcel Service (hereinafter "UPS"), a major customer of Lazy T. Plaintiff was also responsible with communicating with the truck drivers who worked for Lazy T. Plaintiff was on call at home from 5pm to 8am each evening to receive telephone calls from truck drivers who needed information or who had broken down on the road. Plaintiff was also on call from 5pm Friday night until 8am Monday morning to communicate with truck drivers. Plaintiff would also run errands away from the work site of Lazy T. to pick up parts and supplies.

27. Plaintiff would process applications from drivers and set the new drivers up for drug testing, DOT physicals and enter all their information on an excel spreadsheet.

28. Plaintiff would review the weekly trip sheets submitted by drivers, enter that information into an excel spreadsheet and then reconcile the information submitted by the drivers to the information received by Defendants from UPS.

29. Plaintiff answered telephone calls from drivers who were out on the road and relayed the information received from the drivers to Harmon.

30. Defendants provided Plaintiff with the tools and materials needed to perform her work.

31. During her employment with Defendants, Plaintiff did not maintain any separate business organization from Defendants.

32. Defendants had knowledge that Plaintiff regularly worked in excess of forty (40) hours each workweek but was not receiving overtime premium pay as required by the FLSA.

33. Plaintiff was the employee of Defendants; she was not an independent contractor.

34. Harmon exercised day to day control of Lazy T. Harmon had an active role in decision making with respect to the employment/working conditions of Plaintiff throughout her employment, including one of the central issue of this case, the classification of Plaintiff as an independent contractor and the failure to pay Plaintiff the overtime premium pay owed her under the FLSA.

35. Harmon is Plaintiff's uncle. Harmon is the biological brother of Plaintiff's father.

36. Immediately after the start of her employment, Harmon began to subject Plaintiff to unwelcomed sexual touching, verbal and written requests for sexual favors

and requests to have sexual intercourse, made comments about her physical appearance and also directed other lewd sexual remarks to her. Harmon's conduct continued throughout her employment with Defendants.

37. Harmon repeatedly sent Plaintiff text messages during her employment that included inappropriate sexual remarks and requests for sex, including but not limited to, one message that stated he wanted to "eat your pussy god I would love that."

38. Throughout her employment, Harmon would isolate Plaintiff in the workplace and make physical contact with her, including rubbing her shoulders and legs, grabbing her arms and pulling her towards him in an attempt to kiss her, and attempts to touch her breasts. On these occasions, Plaintiff was forced to physically push Harmon away to avoid his advances.

39. In August 2017, Plaintiff made a business trip to Richmond, Virginia with Harmon. While in Richmond, Harmon lured Plaintiff into his hotel room under the pretext of needing to discuss business issues. Once inside the hotel room, Harmon locked the door so as to prevent Plaintiff from leaving the hotel room. Once inside the hotel room, Harmon offered Plaintiff alcohol to drink; Plaintiff also noticed a needle on the bedside table. Harmon then requested sex from Plaintiff. He told Plaintiff they could pretend they were strangers and that they could role-play that Harmon had just "picked her up" in the hotel. Harmon's actions placed Plaintiff in fear for her personal/physical safety.

40. On September 6, 2018, Plaintiff was leaving a local CVS drugstore. When Plaintiff exited the CVS, she noticed that Harmon was parked in a car next to her car in

the CVS parking lot. Harmon request that Plaintiff enter his vehicle and sit in the front seat so he could talk to Plaintiff. Once inside Harmon's car, Plaintiff was physically assaulted by Harmon. Harmon began to run his hand up and down between Plaintiff's legs and even contacted Plaintiff's vaginal area. Plaintiff physically struggled with Harmon in an attempt to get Harmon to stop. Harmon repeatedly locked the doors to his vehicle to prevent Plaintiff from leaving the vehicle. Harmon pinched and grabbed Plaintiff's face in repeated attempts to kiss her on the mouth. Eventually, Plaintiff was able to force her way out of the car.

41. Throughout her employment, Harmon would offer Plaintiff money for sex. Plaintiff repeatedly told Harmon no. Harmon would respond to Plaintiff's rejections by telling her she should take the money because he was going to "take", or "force", the sex from her.

42. Harmon's conduct caused Plaintiff to fear for her personal safety and also caused her a great deal of emotional stress.

43. Throughout her employment, Plaintiff repeatedly told Harmon to stop making the sexual comments, making requests for sex and stop his physical touching of her. Plaintiff repeatedly reminded Harmon they were related, that he was her biological uncle. Harmon ignored Plaintiff's requests and continued his conduct.

44. Throughout her employment, Harmon repeatedly threatened to fire Plaintiff from her job if she ever told anyone about his behavior; the requests for sex, sexual remarks and physical touching. Harmon on multiple occasions also threatened Plaintiff with violence if she reported his conduct to anyone. Harmon told Plaintiff he knew many

people who could make her disappear and no one would ever find her. Plaintiff believed Harmon was threatening her life. Plaintiff lived in fear for her personal safety and this also caused her a great deal of emotional distress.

45. In January 2019, Plaintiff filed criminal charges against Harmon for his conduct on September 6, 2018.

47. On February 22, 2019 Plaintiff was fired from her job by Harmon. Harmon left her a voice mail message stating he was terminating her because of the charges she had filed against him.

48. Plaintiff never consented to have any physical contact with Harmon. Harmon's conduct was unwelcome.

49. As a result of the actions of Harmon, Plaintiff has experienced severe emotional distress, including feelings of anxiety, humiliation and fear.

50. Harmon's actions have been willful, wanton and in reckless disregard of the rights of Plaintiff.

## FIRST CAUSE OF ACTION-ASSAULT

(**Defendant Harmon**)

51. Plaintiff realleges each and every allegation contained in the above paragraphs as if repeated here verbatim.

52. Harmon placed Plaintiff in reasonable apprehension or fear of an offensive touching and bodily harm without her consent and Plaintiff was in fact apprehensive an offensive touching and bodily harm was going to occur.

53. Harmon engaged in such conduct intentionally or recklessly.

54. Plaintiff has suffered severe emotional distress as a result of such conduct.

55. Wherefore, Plaintiff requests a trial by jury on her assault claim and entry of judgement in an amount to be determined by the jury but which should include nominal or actual damages, compensatory damages, and punitive damages, as well as any other relief shown to be appropriate including, but not limited to, costs and interest.

## SECOND CAUSE OF ACTION-BATTERY

**(Defendant Harmon)**

56. Plaintiff realleges each and every allegation contained in the above paragraphs as if repeated here verbatim.

57. Harmon engaged in a harmful, offensive touching of Plaintiff without her consent.

58. Harmon engaged in such conduct with the specific intent to harm Plaintiff or with reckless indifference to the likelihood of such harm.

59. Plaintiff has suffered severe emotional distress as a result of such conduct.

60. Wherefore, Plaintiff requests a trial by jury on her battery claim and entry of judgement in an amount to be determined by the jury but which should include nominal or actual damages, compensatory damages, and punitive damages, as well as any other relief shown to be appropriate including, but not limited to, costs and interest.

## THIRD CAUSE OF ACTION-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Defendant Harmon)**

61. Plaintiff realleges each and every allegation contained in the above paragraphs as if repeated here verbatim.

62. Plaintiff is informed and believes that Harmon acted negligently, willfully, wantonly, recklessly, grossly negligently, and intentionally, being fully aware of the severe emotional trauma that the Plaintiff would suffer as a consequence of his actions and conduct. Harmon caused such acts to be done against the Plaintiff thereby causing the Plaintiff to suffer emotional distress and outrage.

63. Harmon undertook conduct that was so extreme and outrageous as to exceed all possible bounds of decency, with such conduct being regarded in a normal society as atrocious and utterly intolerable in the civilized community.

64. That as a direct and proximate result of the outrageous actions taken by Harmon, Plaintiff suffered acute and severe emotional distress that no reasonable person could be expected to endure.

65. Wherefore, Plaintiff requests a trial by jury on her intentional infliction of emotional distress claim and entry of judgement in an amount to be determined by the jury but which should include nominal or actual damages, compensatory damages, and punitive damages, as well as any other relief shown to be appropriate including, but not limited to, costs and interest.

## FOURTH CAUSE OF ACTION-DISCRIMINATION BASED ON SEX-HOSTILE WORK ENVIRONMENT

**(Defendant Lazy T.)**

66. Plaintiff realleges each and every allegation contained in the above paragraphs as if repeated here verbatim.

67. During Plaintiff's employment, Plaintiff was subjected to sexual harassment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

68. Defendant discriminated against Plaintiff because of her sex in violation of Section 703(a) of Title VII of the Civil Rights Act of 1964 by discharging and otherwise discriminating against her, by engaging in, tolerating or failing to prevent the sexual harassment alleged above and by failing to take affirmative action to correct and redress these unlawful acts and employment practices.

69. Harmon engaged in sexually inappropriate and harassing behavior directed at Plaintiff that a reasonable person would find hostile and abusive, that was in fact offensive to Plaintiff, and that she deemed sexually harassing.

70. Harmon's sexually inappropriate and harassing behavior was unwelcome.

71. The sexual harassment Plaintiff suffered was sufficiently severe and pervasive so as to create an intimidating, hostile, and offensive work environment.

72. Wherefore, Plaintiff requests a trial by jury on her Title VII sexual harassment/ hostile work environment claim. As a direct and proximate result of Defendant's violation of Plaintiff's rights under Title VII she has suffered, lost wages, benefits and other pecuniary losses. In addition, she has and will continue to suffer emotional distress, depression, anxiety, pain and suffering, mental anguish, embarrassment and loss of enjoyment of life. Plaintiff is entitled to an award of damages for these injuries in an amount to be determined at trial.

73. Defendant's unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard for Plaintiff's rights. Accordingly, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION-RETALIATION

**(Defendant Lazy T.)**

74. Plaintiff realleges each and every allegation contained in the above paragraphs as if repeated here verbatim.

75. During the course of Plaintiff's employment, Plaintiff was retaliated against in violation of Title VII of the Civil Rights Act of 1964 and subjected to less favorable terms and conditions of employment than similarly situated employees because she opposed Defendant's illegal, discriminating and harassing behavior.

76. Plaintiff was terminated in retaliation for complaining about sexual touching, discrimination and harassment and filing a Charge of discrimination.

77. Defendants discriminated against Plaintiff in violation of Section 704 of Title VII of the Civil Rights Act of 1964 by discharging and otherwise discriminating against her because of her complaints and opposition to the unsolicited and unwelcome sexual touching and sexual advances upon her.

78. Wherefore, Plaintiff requests a trial by jury on her Title VII retaliation claim. As a direct and proximate result of Defendant's violation of Plaintiff's rights under Title VII she has suffered, lost wages, benefits and other pecuniary losses. In addition, she has and will continue to suffer emotional distress, depression, anxiety, pain and suffering, mental anguish, embarrassment and loss of enjoyment of life. Plaintiff is entitled to an award of damages for these injuries in an amount to be determined at trial.

79. Defendant's unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard for Plaintiff's rights. Accordingly, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION VIOLATION OF FLSA– OVERTIME

**(Both Defendants)**

80. Plaintiff realleges each and every allegation contained in the above paragraphs as if repeated here verbatim.

81. Defendants violated the FLSA by failing to pay Plaintiff an overtime premium rate of pay for all hours worked in excess of forty in a workweek.

82. Defendants violated the FLSA by failing to keep, make and preserve accurate records of all time worked by Plaintiff.

83. Defendants violation of the FLSA was willful.

84. Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

## SEVENTH CAUSE OF ACTION-WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

(**Both Defendants**)

85. Plaintiff realleges each and every allegation contained in the above paragraphs as if repeated here verbatim.

86. Plaintiff was terminated from her employment because she refused to accede to the sexual advances of Harmon and objected to Harmon's unwelcome sexual touching, verbal and written requests for sexual favors, requests to have sexual intercourse, comments about her appearance and lewd sexual remarks. Plaintiff was also terminated because of the criminal charges she filed against Harmon in January 2019.

87. Harmon's actions in terminating Plaintiff's employment violate the public policy of North Carolina as articulated in N.C. Gen. Stat. § 143-422.2 and N.C. Gen. Stat. § 14-226.

88. That as a direct and proximate result of the actions taken by Harmon, Plaintiff suffered economic damages, including lost wages, as well as severe emotional distress.

89. Wherefore, Plaintiff requests a trial by jury on her wrongful discharge claim and entry of judgement in an amount to be determined by the jury but which should include nominal or actual damages, compensatory damages, and punitive damages, as well as any other relief shown to be appropriate including, but not limited to, costs and interest.

## **PRAYER FOR RELIEF**

WHEREFORE, upon the trial of this matter, Plaintiff prays that the Court enter Judgment for her and award the following relief:

A. A judgement awarding Plaintiff lost wages, unpaid overtime wages, front pay, lost employment benefits, and any other compensation denied or lost because of the conduct of the Defendants.

B. Nominal, actual and compensatory damages.

C. Punitive damages;

D. A judgement awarding Plaintiff liquidated damages for Defendants violation of the FLSA;

E. An Order that the costs of this action be taxed against Defendants;

F.  An Order awarding  Plaintiff reasonable attorney's fees;

G.  Pre-judgment and post-judgement interest on all amounts for which pre-judgement and post-judgement interest is legally allowable;

F. All other relief whether legal, equitable or injunctive, as this Court deems just and necessary.

G. Plaintiff demands a jury trial in this action.

Respectfully submitted,

/s/ Jacob J. Modla
Jacob J. Modla
N.C Bar. ID No: 17534
The Law Offices of Jason E. Taylor P.C.
454 South Anderson Rd.
Suite 303
Rock Hill, SC 29730
T: 803-328-0898
E-Mail: jmodla@jasonetaylor.com

January 20, 2020                     ATTORNEY FOR PLAINTIFF