IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

|  |  |  |
|---|---|---|
| Angela N. Allen | ) | C. A. No: 5:20-cv-00003-KDB-DCK |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | JURY TRIAL DEMANDED |
|  | ) |  |
| Lazy T, LLC., and Larry Dexter Harmon | ) |  |
|  | ) |  |
|  | ) |  |
| Defendants | ) |  |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT FINAL JUDGMENT

COMES NOW Plaintiff, by and through her undersigned counsel, and files this her Memorandum in Support of Motion for Default Final Judgment.

## I. FACTUAL SUMMARY

The following facts are undisputed in this lawsuit.

Plaintiff was employed by Lazy T. as an Operations Manager. (Compl. ¶15). Defendant Harmon was the owner and principal managing member of Defendant Lazy T. Harmon exercised day to day control over Lazy T. and its employees. Harmon made the decisions regarding the hiring and firing of employees of Lazy T. Harmon set the work schedules for all employees of Lazy T., including the Plaintiff. Harmon supervised all employees of Lazy T., assigned their work duties and made all decisions regarding the payment of wages to employees of Lazy T. (Compl. ¶16). Harmon hired Plaintiff in June 2017 and Plaintiff reported directly to Harmon. (Compl. ¶17). Lazy T is a trucking company whose trucks carry cargo and freight throughout

the United States. Lazy T. employed approximately 20 employees at all times relevant to this Complaint. (Compl. ¶18).

Throughout her employment, Defendants classified Plaintiff as an "independent contractor." (Compl. ¶19). Defendants failed to pay Plaintiff overtime compensation for all hours worked in excess of forty hours per work week, as is required by the Fair Labor Standards Act. (Compl. ¶20) Defendants paid Plaintiff a weekly wage of $600.00 per week. In approximately September 2018, Plaintiff's weekly wage was increased to $800.00 per week. However, if Plaintiff worked less than 40 hours in a work week at the worksite of Lazy T., her weekly wage was reduced. Defendants never compensated Plaintiff for work performed at her home or otherwise performed by her away from the worksite of Lazy T. (Compl. ¶21). Throughout her employment, Plaintiff worked approximately 45 to 55 hours each work week. (Compl. ¶22).

Defendants exercised total control over Plaintiff during her employment. Defendants scheduled all of Plaintiff's work. (Compl. ¶23).Defendants set Plaintiff's work hours, including requiring Plaintiff to work on weekends. Defendants established work schedule for Plaintiff at its work site was 8am to 5pm, Monday to Friday. Plaintiff was also on call every night during the work week and on weekends and worked approximately 1 to 3 hours from home each evening. (Compl. ¶24).Defendants kept no record of the hours worked by Plaintiff from home or work performed away from the worksite of Lazy T. (Compl.¶25). Plaintiff duties were clerical in nature. She would review, file and process all paperwork received from United Parcel Service (hereinafter "UPS"), a major customer of Lazy T. Plaintiff was also responsible with communicating with the truck drivers who worked for Lazy T.

Plaintiff was on call at home from 5pm to 8am each evening to receive telephone calls from truck drivers who needed information or who had broken down on the road. Plaintiff was also on call from 5pm Friday night until 8am Monday morning to communicate with truck drivers. Plaintiff would also run errands away from the work site of Lazy T. to pick up parts and supplies. (Compl ¶26) Plaintiff would process applications from drivers and set the new drivers up for drug testing, DOT physicals and enter all their information on an excel spreadsheet. (Compl. ¶27) Plaintiff would review the weekly trip sheets submitted by drivers, enter that information into an excel spreadsheet and then reconcile the information submitted by the drivers to the information received by Defendants from UPS. (Compl. ¶28). Plaintiff answered telephone calls from drivers who were out on the road and relayed the information received from the drivers to Harmon. (Compl. ¶29).Defendants provided Plaintiff with the tools and materials needed to perform her work. (Compl. ¶30). During her employment with Defendants, Plaintiff did not maintain any separate business organization from Defendants. (Compl. ¶31). Defendants had knowledge that Plaintiff regularly worked in excess of forty (40) hours each workweek but was not receiving overtime premium pay as required by the FLSA. (Compl. ¶32). Plaintiff was the employee of Defendants; she was not an independent contractor. (Compl. ¶33)

Harmon exercised day to day control of Lazy T. Harmon had an active role in decision making with respect to the employment/working conditions of Plaintiff throughout her employment, including one of the central issue of this case, the classification of Plaintiff as an independent contractor and the failure to pay Plaintiff the overtime premium pay owed her under the FLSA. (Compl. ¶34).

Harmon is Plaintiff's uncle. Harmon is the biological brother of Plaintiff's father. (Compl. ¶35), Immediately after the start of her employment, Harmon began to subject Plaintiff

to unwelcomed sexual touching, verbal and written requests for sexual favors and requests to have sexual intercourse, made comments about her physical appearance and also directed other lewd sexual remarks to her. Harmon's conduct continued throughout her employment with Defendants. (Compl. ¶36) Harmon repeatedly sent Plaintiff text messages during her employment that included inappropriate sexual remarks and requests for sex, including but not limited to, one message that stated he wanted to "eat your pussy god I would love that." (Compl. ¶37). Throughout her employment, Harmon would isolate Plaintiff in the workplace and make physical contact with her, including rubbing her shoulders and legs, grabbing her arms and pulling her towards him in an attempt to kiss her, and attempts to touch her breasts. On these occasions, Plaintiff was forced to physically push Harmon away to avoid his advances. (Compl. ¶38)

In August 2017, Plaintiff made a business trip to Richmond, Virginia with Harmon. While in Richmond, Harmon lured Plaintiff into his hotel room under the pretext of needing to discuss business issues. Once inside the hotel room, Harmon locked the door so as to prevent Plaintiff from leaving the hotel room. Once inside the hotel room, Harmon offered Plaintiff alcohol to drink; Plaintiff also noticed a needle on the bedside table. Harmon then requested sex from Plaintiff. He told Plaintiff they could pretend they were strangers and that they could role-play that Harmon had just "picked her up" in the hotel. Harmon's actions placed Plaintiff in fear for her personal/physical safety. (Compl. ¶39).

On September 6, 2018, Plaintiff was leaving a local CVS drugstore. When Plaintiff exited the CVS, she noticed that Harmon was parked in a car next to her car in the CVS parking lot. Harmon request that Plaintiff enter his vehicle and sit in the front seat so he could talk to Plaintiff. Once inside Harmon's car, Plaintiff was physically assaulted by Harmon. Harmon

began to run his hand up and down between Plaintiff's legs and even contacted Plaintiff's vaginal area. Plaintiff physically struggled with Harmon in an attempt to get Harmon to stop. Harmon repeatedly locked the doors to his vehicle to prevent Plaintiff from leaving the vehicle. Harmon pinched and grabbed Plaintiff's face in repeated attempts to kiss her on the mouth. Eventually, Plaintiff was able to force her way out of the car. (Compl. ¶40).

Throughout her employment, Harmon would offer Plaintiff money for sex. Plaintiff repeatedly told Harmon no. Harmon would respond to Plaintiff's rejections by telling her she should take the money because he was going to "take", or "force", the sex from her. (Compl. ¶41).Harmon's conduct caused Plaintiff to fear for her personal safety and also caused her a great deal of emotional stress. (Compl. ¶42).

Throughout her employment, Plaintiff repeatedly told Harmon to stop making the sexual comments, making requests for sex and stop his physical touching of her. Plaintiff repeatedly reminded Harmon they were related, that he was her biological uncle. Harmon ignored Plaintiff's requests and continued his conduct. (Compl. ¶43). Throughout her employment, Harmon repeatedly threatened to fire Plaintiff from her job if she ever told anyone about his behavior, the requests for sex, sexual remarks and physical touching. Harmon on multiple occasions also threatened Plaintiff with violence if she reported his conduct to anyone. Harmon told Plaintiff he knew many people who could make her disappear and no one would ever find her. Plaintiff believed Harmon was threatening her life. Plaintiff lived in fear for her personal safety and this also caused her a great deal of emotional distress. (Compl. ¶44). Plaintiff never consented to have any physical contact with Harmon. Harmon's conduct was unwelcome. (Compl. ¶48).

In January 2019, Plaintiff filed criminal charges against Harmon for his conduct on September 6, 2018. (Compl. ¶45) On February 22, 2019 Plaintiff was fired from her job by Harmon. Harmon left her a voice mail message stating he was terminating her because of the charges she had filed against him. (Compl. ¶47). As a result of the actions of Harmon, Plaintiff has experienced severe emotional distress, including feelings of anxiety, humiliation and fear. (Compl. ¶49). Harmon's actions have been willful, wanton and in reckless disregard of the rights of Plaintiff. (Compl. ¶50).

## II. PROCEDURAL BACKGROUND

Plaintiff filed her Complaint on January 20, 2020. On March 17, 2020, the Court Ordered that Defendants were to have replacement counsel make an appearance by March 23, 2020 and reaffirmed their Answer was due on March 27, 2020. (ECF No. 9) Defendants failed to have replacement counsel make an appearance or file their Answer to the Complaint. On April 3, 2020, Plaintiff filed a Motion for Entry of Default against Defendants. On April 3, 2020, the Clerk filed an Entry of Default against Defendants. (ECF No. 11). Since April 3, 2020, neither Defendant has moved to set aside the Entry of Default.

## III. ARGUMENT

Federal Rules of Civil Procedure Rule 55 authorizes the entry of a default judgment when a defendant fails to defend in accordance with the Rules. After the entry of default, the non-defaulting party may move the court for default judgment under Rule 55(b). Here, Plaintiff moved for entry with the Clerk of the Court for entry of default pursuant to Rule 55(a) and provided notice to the defaulting party prior to the entry of default by the Court.

Under Rule 55(b)(2), this Court may enter default judgment against Defendants for failure to appear and defend. Entry of default judgment is appropriate if the defendant's liability

is well-pled in the Complaint and the defendants have failed to participate in the litigation in good faith. Eagle Hosp. Physicians v. SRG Consulting, 561 F.3d. 1298, 1307 (11th Cir. 2009). The entry of a default judgement pursuant to Rule 55(b)(2) is left to the sound discretion of the court. See. U.S. Commodity Futures Trading Comm'n v. PMC Strategy, LLC, 903 F.Supp. 2d. 368, 375 (W.D.N.C. 2012).

Defendants have failed to appear and defend against these claims. Plaintiff respectfully requests that this Court make findings of facts consistent with the undisputed allegations in the Complaint. Plaintiff further requests that the Court conclude, as a matter of law, that Plaintiff is entitled to a default judgement against Defendants on all the claims raised in her Complaint, as follows.

    1. As to Defendant Harmon on her claims for Assault, Battery, and Intentional Infliction of Emotional Distress.

    2. As to Defendant Lazy T. on her claims for retaliation and sexual harassment/ sexually hostile work environment under Title VII of the Civil Rights Act of 1964.

    3. As to both Defendants, jointly and severally, on her claims for violation of the overtime provisions of the Fair Labor Standards Act as well as Wrongful Discharge in Violation of the Public Policy of North Carolina.

## IV. AWARD OF MONETARY DAMAGES

Plaintiff respectfully requests that this Court enter an order awarding her monetary damages without the need of a hearing on her FLSA overtime claim and her back pay damages on her wrongful discharge and retaliatory discharge claims. Upon entry of default, the well-pleaded allegations of the complaint are taken as true. Fed. R. Civ. P. 8(b)(6); see also Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default,

admits the plaintiff's well pleaded allegations of fact, is concluded on those facts by the judgment"). "It is not necessary to conduct a hearing in all cases involving a motion for default judgment...'[c]ourts have broad discretion to determine whether a hearing is 'necessary and proper,' and where the court possesses an adequate basis on which to enter a damage award, it need not conduct a hearing.'" *Maloney v. Disciples Ltd., LLC*, 2007 U.S. Dist. LEXIS 36726 (M.D.N.C. 2007) (citing *Diversified Financial Sys., Inc. v. Tomich Corp*., No. 95 CV 4211, 1997 WL 177873, at *3 (E.D.N.Y. 1997). Here, there is ample information for the Court to enter an order awarding Plaintiff monetary damages in the following amounts:

### 1. Back Wages on Plaintiff's Retaliatory Discharge and Wrongful Discharge Claim

Plaintiff was illegally terminated on February 22, 2019. (Compl. ¶47) Plaintiff's compensation was $800.00 per week on the date of her discharge. (Compl. ¶ 21) Seventy-three (73) weeks have elapsed since Plaintiff's illegal termination. (Allen Aff. ¶5) Therefore, Plaintiff has a gross back wage claim of $58,400.00. (Allen Aff. ¶ 6). Following her termination, Plaintiff has had interim earnings of $6,202.00. (Allen Aff. ¶8) Therefore, Plaintiff has a net back wage loss of $52,198.00. (Allen Aff. ¶9). Plaintiff asks the Court to grant her relief in full for the total back wages due to her based upon Defendants illegal termination of her employment.

### 2. Unpaid Overtime

Plaintiff was illegally denied overtime pay during her employment by Defendants. As shown in the Complaint, Defendants violation of the FLSA was willful. Accordingly, Plaintiff is entitled to the three-year limitations period under the FLSA. See. 29 U.S.C §

255(a). Accordingly, Plaintiff can recover for any overtime worked between January 20, 2017 and the present.

Plaintiff was hired in June 2017 and was paid $600.00 per week. (Compl. ¶ 21) Plaintiff's wage continued at $600.00 per week until September 2018. There are sixty-five (65) work weeks between June 2017 and the end of August 2018. Plaintiff's unpaid overtime damages are calculated using the half-time methodology. See. <u>Desmond v. PNGI Charles Town Gaming, LLC.</u> 630 F.3d.351 (4th. Cir. 2011). It is undisputed Plaintiff worked between 45 and 55 hours per week during her employment. (Compl. ¶ 22). Using fifty (50) hours as the average hours worked per week, Plaintiff would be owed $3,900.00 for this overtime. ($600.00 ÷ 50 hours = $12.00 x .5 = $6.00 overtime premium x 10 hours per week of overtime = $60.00 x 65 weeks = $3,900.00.)

Plaintiff pay was increased to $800.00 per week in September 2018. (Compl. ¶ 21). There are twenty-five (25) work weeks between September 2018 and Plaintiff's termination in February 2019. Using fifty (50) hours as the average hours worked per week during this period, Plaintiff would be owed $2000.00 for this overtime. ($800.00 ÷ 50 hours = $16.00 x .5 = $8.00 overtime premium x 10 hours per week of overtime = $80.00 x 25 weeks = $2000.00.)

Plaintiff is owed a total of $5,900.00 for unpaid overtime. Plaintiff's Complaint outlines how the Defendants' violation of the FLSA was willful and therefore Plaintiff is entitled to liquidated damages. See. 29 U.S.C § 216(b). Accordingly, Plaintiff is entitled to $5900.00 in liquidated damages. Therefore, Plaintiff asks the Court to award her $11,800.00 for the unpaid overtime owed to her by Defendants.

In summary, Plaintiff seeks an order entering monetary damages in the amount of $63,998.00 against Defendants on her FLSA overtime claim and wrongful discharge and retaliatory discharge claims.

## CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that this Court grant her Motion for Default Judgment and enter an Order finding Defendants in default and awarding her a judgment and damages on all of the claims raised in her lawsuit. Plaintiff requests a judgment be entered in the amount of $63,998.00 on her unpaid overtime claim and back pay damages on her wrongful termination and retaliatory termination claims, without the need for a hearing. Plaintiff also requests the Court set a hearing so the Court can establish her damages on her front pay claim on her wrongful discharge and retaliatory discharge claims, as well as, compensatory and punitive damages on her Assault, Battery, Intentional Infliction of Emotional Distress claims under the law of North Carolina and Sexual Harassment claim under Title VII of the Civil Rights Act of 1964. Plaintiff also requests the Court grant her, pre-judgment and post-judgment interest, attorneys' fees and costs and awarding Plaintiff such further and additional relief as this Court deems just and equitable.

Respectfully submitted,

/s/ Jacob J. Modla
Jacob J. Modla
N.C Bar. ID No: 17534
The Law Offices of Jason E. Taylor P.C.
454 South Anderson Rd.
Suite 303
Rock Hill, SC 29730
T: 803-328-0898
E-Mail: jmodla@jasonetaylor.com

July 20, 2020                                      ATTORNEY FOR PLAINTIFF

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 20, 2020 he filed the foregoing, which was served this date by ECF, and by serving the Defendants pursuant to Rule 5 of the Federal Rules of Civil Procedure by mail, to the address shown below, as follows.

Larry Dexter Harmon
4273 Beach Rd.
Hudson, NC 28638

|  |  |
|---|---|
|  | /s/ Jacob J. Modla |
|  | Jacob J. Modla |
|  | N.C Bar. ID No: 17534 |
|  | The Law Offices of Jason E. Taylor P.C. |
|  | 454 South Anderson Rd. |
|  | Suite 303 |
|  | Rock Hill, SC 29730 |
|  | T: 803-328-0898 |
|  | E-Mail: jmodla@jasonetaylor.com |
| July 20, 2020 | ATTORNEY FOR PLAINTIFF |