# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION

| | |
|---|---|
| ANGELA N. ALLEN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No: 5:20-cv-00003-KDB-DCK |
| | ) |
| LAZY T, LLC. and | ) |
| LARRY DEXTER HARMON | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND FINAL DEFAULT JUDGMENT

Before the Court is Plaintiff's Motion for Default Final Judgment. (ECF No. 14). For the reasons stated below, Plaintiff's motion is granted.

### I. PROCEDURAL BACKGROUND

Plaintiff filed her Complaint on January 20, 2020. (ECF No. 1). On March 17, 2020, the Court Ordered Defendants to have replacement counsel make an appearance by March 23, 2020 and reaffirmed their Answer was due on March 27, 2020. (ECF No. 9). Defendants then failed to have replacement counsel make an appearance or file their Answer to the Complaint. On April 3, 2020, Plaintiff filed a Motion for Entry of Default against Defendants. On April 3, 2020, the Clerk filed an Entry of Default against Defendants. (ECF No. 11). On July 20, 2020, Plaintiff filed a Motion for Default Judgment. (ECF No. 14). Defendants were served with Plaintiff's Motion by the U.S. Marshal's office on October 6, 2020. (ECF No. 18). Since October 6, 2020, neither Defendant has moved to set aside the Entry of Default or filed an Answer to the Complaint. After

1

Case 5:20-cv-00003-KDB-DCK   Document 21   Filed 01/04/21   Page 1 of 12

due notice on the Court's docket (which was also sent by certified mail to Defendants), a Hearing was held before the Court on Plaintiff's Motion for Default Judgment on December 10, 2020.

## II. LEGAL STANDARD

"Entry of default judgment is left to the discretion of the court." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). "Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint." *J & J Sports Prods., Inc. v. Romenski*, 845 F. Supp. 2d 703, 705 (W.D.N.C. 2012). However, "[t]he defendant is not held . . . to admit conclusions of law," as "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). To determine whether to enter judgment on a defendant's default, the court examines whether the well-pleaded allegations in the complaint support the relief sought in the case. *Id.* "There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206. If the court determines that liability has been established, the court must then determine damages. *Romenski*, 845 F. Supp. 2d at 706. Unlike allegations involving liability, allegations regarding damages are not deemed admitted by a defendant's default. *Lawbaugh*, 359 F. Supp. 2d at 422. "The court must make an independent determination regarding damages." *Romenski*, 845 F. Supp. 2d at 706. In determining damages, the court may conduct an evidentiary hearing or rely on affidavits or documentary evidence in the record. *Id.*

## III. DISCUSSION

### A. Plaintiff has established liability

Plaintiff's Complaint sets forth the following claims against Defendants: (1) Assault under the common law of North Carolina (ECF No 1 ¶¶ 38-40, 48, 51-55); (2) Battery under the common

law of North Carolina (ECF No1 ¶¶ 38-40, 48, 56-60); (3) Intentional Infliction of Emotional Distress under the common law of North Carolina (ECF No 1 ¶¶ 41-44, 61-65); (4) Sexual Harassment in violation of Title VII of the Civil Rights Act of 1964 (ECF No 1¶¶ 35-37, 48, 66-73); (5) Retaliation in violation of Title VII of the Civil Rights Act of 1964 (ECF No 1 ¶¶ 7, 47, 74-79); (6) Failure to pay overtime in violation of the Fair Labor Standards Act (ECF No 1 ¶¶ 15-34, 80-84); and (7) Wrongful discharge in violation of the public policy of North Carolina (ECF No 1 ¶¶ 45-47, 85-89).

As outlined above, Defendants failed to file an Answer to the Complaint. The Court has carefully considered the allegations in Plaintiff's Complaint, which are well-pleaded and hereby taken as true, as well as the testimony presented to the Court during the hearing on December 10, 2020 and finds that Plaintiff has established that Defendants are liable to her on each of her claims. Plaintiff is, therefore, entitled as a matter of law to entry of default judgment with respect to each of the claims stated in her Complaint.

### B. Plaintiff is entitled to an award of damages

Having determined that Defendants are liable to Plaintiff, the Court must make an independent determination of Plaintiff's damages based on the record. A court is free to consider a number of factors in determining the appropriate damage amount, including "the severity of the violation; the degree of harm to the plaintiff; the relative financial burdens of the parties; and the purpose to be served by imposing statutory damages." *J & J Sports Prods., Inc. v. Olmos*, No. 5:08CV33-V, 2010 WL 625283, at *2 (W.D.N.C. Feb. 19, 2010) (citing *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 330 n.8 (4th Cir. 2008)).

The Court makes the following findings to provide context for its determination of an appropriate award of damages: Lazy T. is a trucking company whose trucks carry cargo and freight throughout the United States. Lazy T. employed approximately 20 employees at all times relevant

to this Complaint. (ECF No 1 ¶18). Plaintiff was employed by Lazy T. as an Operations Manager. (ECF No 1 ¶15). Defendant Harmon was the owner and principal managing member of Defendant Lazy T. and exercised day to day control over Lazy T. and its employees. Harmon supervised and made the decisions regarding the hiring and firing of employees of Lazy T., set their work schedules, assigned their work duties and made all decisions regarding the payment of wages. (ECF No 1 ¶16). Harmon hired Plaintiff in June 2017, and Plaintiff reported directly to Harmon. (ECF No 1 ¶17).

Throughout Plaintiff's employment, Defendants improperly classified Plaintiff as an "independent contractor," and failed to pay her overtime compensation for all hours worked in excess of 40 hours per work week, as is required by the Fair Labor Standards Act. (ECF No 1 ¶¶19, 20). Defendants paid Plaintiff a weekly wage of $600.00 per week, which was increased to $800.00 a week in approximately September 2018. However, if Plaintiff worked less than 40 hours in a work week at the worksite of Lazy T., her weekly wage was reduced. Defendants never compensated Plaintiff for work performed at her home or otherwise performed by her away from the worksite of Lazy T. (ECF No 1 ¶21). Throughout her employment, Plaintiff worked approximately 45 to 55 hours each work week. (ECF No 1 ¶22).

Defendants exercised total control over Plaintiff during her employment. Defendants scheduled all of Plaintiff's work and set her work hours, including requiring Plaintiff to work on weekends. (ECF No 1 ¶23). Defendants established work schedule for Plaintiff at its work site was 8 a.m. to 5 p.m., Monday to Friday. Plaintiff was also on call every night during the work week and on weekends and worked approximately 1 to 3 hours from home each evening. (ECF No 1 ¶24). Defendants kept no record of the hours worked by Plaintiff from home or work performed away from Lazy T.'s worksite . (ECF No 1 ¶25).

Plaintiff's duties were clerical in nature. She would review, file and process all paperwork received from United Parcel Service (hereinafter "UPS"), one of Lazy T.'s major customers. Plaintiff was also responsible with communicating with the truck drivers who worked for Lazy T. Plaintiff was on call at home from 5 p.m. to 8 a.m. each evening and from 5 p.m. Friday night until 8 a.m. Monday morning to receive telephone calls from truck drivers who needed information or who had broken down on the road. Plaintiff would also run errands away from the work site of Lazy T. to pick up parts and supplies. (ECF No 1 ¶26). In addition to these duties, Plaintiff would process applications from drivers and set the new drivers up for drug testing, DOT physicals and enter all their information on an excel spreadsheet. (ECF No 1 ¶27). Plaintiff would review the weekly trip sheets submitted by drivers, enter that information into an excel spreadsheet and then reconcile the information submitted by the drivers to the information received by Defendants from UPS. (ECF No 1 ¶28). At all times, Defendants provided Plaintiff with the tools and materials needed to perform her work, (ECF No 1 ¶30), and during her employment with Defendants, Plaintiff did not maintain any separate business organization from Defendants. (ECF No 1 ¶31).

Harmon exercised day to day control of Lazy T. and had an active role in decision making with respect to the employment/working conditions of Plaintiff throughout her employment, including the classification of Plaintiff as an independent contractor and the failure to pay Plaintiff the overtime premium pay owed her under the FLSA. (ECF No 1 ¶34).

Beyond being Plaintiff's work supervisor, Harmon is her uncle, the biological brother of her father. (ECF No 1 ¶35). Immediately after the start of her employment, Harmon began subjecting Plaintiff to unwelcomed sexual touching, verbal and written requests for sexual favors and requests to have sexual intercourse. He also made comments about her physical appearance and directed other lewd sexual remarks to her. (ECF No 1 ¶36). For example, Harmon repeatedly sent Plaintiff text messages during her employment that included inappropriate graphic sexual

remarks and requests for sex, including one message that stated he wanted to "eat your pussy god I would love that." (ECF No 1 ¶37). Throughout her employment, Harmon would isolate Plaintiff in the workplace and make physical contact with her, including rubbing her shoulders and legs, grabbing her arms and pulling her towards him in an attempt to kiss her, and attempts to touch her breasts. On these occasions, Plaintiff was forced to physically push Harmon away to avoid his advances. (ECF No 1 ¶38).

In August 2017, Plaintiff made a business trip to Richmond, Virginia with Harmon. While in Richmond, Harmon lured Plaintiff into his hotel room under the pretext of needing to discuss business issues. Once inside the hotel room, Harmon locked the door so as to prevent Plaintiff from leaving the hotel room. Harmon offered Plaintiff alcohol to drink; Plaintiff also noticed a needle on the bedside table. Harmon then requested sex from Plaintiff. He told Plaintiff they could pretend they were strangers and that they could role-play that Harmon had just "picked her up" in the hotel. Although the record is unclear as to how Plaintiff was able to remove herself from the situation, Harmon's actions clearly placed Plaintiff in fear for her physical safety. (ECF No 1 ¶39).

On September 6, 2018, Plaintiff was leaving a local CVS drugstore. When Plaintiff exited the CVS, she noticed that Harmon was parked in a car next to her car in the CVS parking lot. Harmon requested that Plaintiff enter his vehicle and sit in the front seat so he could talk to her. Once inside Harmon's car, Plaintiff was physically assaulted by Harmon. Harmon began to run his hand up and down between Plaintiff's legs and even contacted Plaintiff's vaginal area. Plaintiff physically struggled with Harmon in an attempt to get him to stop. Harmon pinched and grabbed Plaintiff's face in repeated attempts to kiss her on the mouth. Eventually, Plaintiff was able to force her way out of the car despite Harmon repeatedly locking the doors to his vehicle to prevent her from leaving. (ECF No 1 ¶40).

Further, throughout her employment, Harmon would offer Plaintiff money for sex. Plaintiff repeatedly told Harmon no. Harmon would respond to Plaintiff's rejections by telling her she should take the money because he was going to "take" or "force" the sex from her. (ECF No 1 ¶41). Harmon repeatedly threatened to fire Plaintiff from her job if she ever told anyone about his behavior, the requests for sex, sexual remarks or physical touching. Harmon on multiple occasions also threatened Plaintiff with violence if she reported his conduct to anyone. Harmon told Plaintiff he knew many people who could make her disappear and no one would ever find her. Plaintiff believed Harmon was threatening her life and lived in fear for her personal safety, which caused her a great deal of emotional distress. (ECF No 1 ¶42, 44).

Plaintiff repeatedly told Harmon to stop making the sexual comments, making requests for sex and stop his physical touching of her. Plaintiff also repeatedly reminded Harmon they were related, and that he was her biological uncle. Harmon ignored Plaintiff's requests and continued his conduct. (ECF No 1 ¶43). Thus, Plaintiff never consented to have any physical contact with Harmon and his conduct towards her was plainly unwelcome. (ECF No 1 ¶48).

In January 2019, Plaintiff filed criminal charges against Harmon for his conduct on September 6, 2018. (ECF No. 1 ¶45). Then, on January 31, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission alleging sexual harassment against Defendants. (ECF No 1 ¶7). On February 22, 2019, Harmon fired Plaintiff from her job. Harmon left her a voicemail message stating he was terminating her because of the charges she had filed against him. (ECF No 1 ¶47). As a result of Harmon's actions, Plaintiff has experienced severe emotional distress, including feelings of anxiety, humiliation and fear. (ECF No 1 ¶49). Harmon's actions have been willful, wanton and in reckless disregard of the rights of Plaintiff. (ECF No 1 ¶50).

Considering the applicable law, the findings made above and the entire record before the Court, the Court finds, and concludes as a matter of law, that Plaintiff is entitled to the following damages from Defendants:

**1. Back Wages on Plaintiff's Retaliatory Discharge and Wrongful Discharge Claim**

Plaintiff was unlawfully terminated on February 22, 2019 in retaliation for her EEOC claim. Plaintiff's compensation was $800.00 per week on the date of her discharge. Seventy-three (73) weeks elapsed from the time of her termination until the filing of Plaintiff's Motion for Default Judgment. Plaintiff does not seek damages for back wages beyond the date of the filing of her Motion for Default Judgment. Therefore, Plaintiff has a gross back wage claim of $58,400.00. Following her termination, Plaintiff has had interim earnings of $5,371.00. Therefore, Plaintiff is entitled to receive and the Court awards Plaintiff $53,029.00 in back pay.

**2. Unpaid Overtime**

Plaintiff was also unlawfully denied overtime pay during her employment by Defendants. Further, the Court finds that, as shown in the Complaint, Defendants' violation of the FLSA was willful. Plaintiff is thus entitled to recover unpaid overtime pay during the three-year limitations period under the FLSA. *See* 29 U.S.C § 255(a). Accordingly, Plaintiff can recover for any overtime worked during the entire period of her employment, i.e., between June 2017 and February 22, 2019.

Plaintiff was hired in June 2017 and was paid $600.00 per week. Plaintiff's wage continued at $600.00 per week until September 2018. There are sixty-five (65) work weeks between June 2017 and the end of August 2018. The Court will calculate Plaintiff's unpaid overtime damages using the half-time methodology. *See Desmond v. PNGI Charles Town Gaming, LLC.*, 630 F.3d.351 (4th Cir. 2011). Plaintiff worked between 45 and 55 hours per week during her employment. Using 50 hours as the average hours worked per week, Plaintiff is owed $3,900.00

8

for this overtime ($600.00 ÷ 50 hours = $12.00 x .5 = $6.00 overtime premium x 10 hours per week of overtime = $60.00 x 65 weeks = $3,900.00).

Plaintiff's pay was increased to $800.00 per week in September 2018. There are twenty-five (25) work weeks between September 2018 and Plaintiff's termination in February 2019. Using fifty (50) hours as the average hours worked per week during this period, Plaintiff is owed $2000.00 for this overtime. ($800.00 ÷ 50 hours = $16.00 x .5 = $8.00 overtime premium x 10 hours per week of overtime = $80.00 x 25 weeks = $2000.00.)

Plaintiff is thus owed a total of $5,900.00 for unpaid overtime. Also, because Defendants' violation of the FLSA was willful, Plaintiff is entitled to $5,900.00 in liquidated damages. *See* 29 U.S.C § 216(b) (stating that any "employer who violates . . . this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages"). Therefore, the Court awards Plaintiff a total of $11,800.00 for the unpaid overtime owed to her by Defendants.

### 3. Compensatory and Punitive Damages for Plaintiff's Sexual Harassment Claim

At the hearing conducted on December 10, 2020, the Court heard testimony from Plaintiff and her husband, Anthony Allen, regarding the emotional distress damage suffered by Plaintiff as a result of the Defendants' conduct. Plaintiff's compensatory and punitive damages under Title VII of the Civil Rights Act of 1964 are capped at $50,000. 42 U.S.C §1981a(b)(3)(A) because of Defendant Lazy T.'s number of employees. Based upon the very serious facts supporting Plaintiff's sexual harassment claim and the testimony received by the Court on December 10, 2020, which the Court finds to be credible, the Court concludes that Plaintiff is entitled to receive—and

9

Case 5:20-cv-00003-KDB-DCK   Document 21   Filed 01/04/21   Page 9 of 12

therefore awards Plaintiff—the full amount of $50,000.00 in compensatory and punitive damages on her sexual harassment claim under Title VII of the Civil rights Act of 1964.[1]

### 4. Compensatory and Punitive Damages for Plaintiff's Claims of Assault and Battery

The facts show that Harmon committed assault and battery on Plaintiff in the CVS parking lot, which is conduct separate and distinct from his conduct supporting Plaintiff's claims for sexual harassment under Title VII of the Civil Rights Act of 1964. Based on Harmon's actions, the Court finds Plaintiff is entitled to an award of $20,000.00 in compensatory damages and $5,000 in punitive damages[2] on her claims for assault and battery.

### 5. Compensatory and Punitive Damages for Plaintiff's Claim of Intentional Infliction of Emotional Distress.

In her Complaint, Plaintiff also supported her claim for intentional infliction of emotional distress against Harmon. *See supra* Section III. In light of Harmon's particularly invasive, willful and wanton behavior both inside and outside of the workplace, and considering the familial relationships at play that compounded Plaintiff's emotional distress,[3] the Court finds Plaintiff is entitled to an award of $100,000 in compensatory damages and $25,000 punitive damages on her claim for intentional infliction of emotional distress.

---

[1] Because the Court concludes that Plaintiff is entitled to the full capped amount of compensatory and punitive damages it need not apportion the award between the two types of damages, both of which it would award to the Plaintiff for this unlawful conduct.

[2] The punitive damages awarded in this case are perhaps too modest in light of the egregious conduct by Harmon. However, the evidence of record calls into question Harmon's ability to pay damages and the Court finds the punitive damage amounts awarded in this case appropriate in light of Harmon's questionable ability to pay damages awarded to Plaintiff.

[3] At the hearing, Plaintiff and her husband testified at length about the strain Harmon's actions caused Plaintiff and her family members, including significantly affecting the relationship between Plaintiff and her father who physically resembles Harmon.

## IV. ATTORNEY'S FEES AND COSTS

Plaintiff requests attorney's fees and costs pursuant to Title VII and the FLSA. *See* 42 U.S.C. § 2000e-5(k)(2000); 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). In calculating an award of attorney's fees, the Court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008) (listing factors a court is to consider in determining a reasonable number of hours and rate).

Here, Plaintiff asks for $19,075.00 in attorney's fees and offers an affidavit in support of the amount requested. (Doc. No. 20-1). Plaintiff's counsel has been licensed to practice law for 30 years and charges $350.00 per hour. His affidavit reflects that he spent 54.5 hours on this case meeting with his client, preparing and reviewing documents for the EEOC, drafting the Complaint, attending a mediation, and preparing for default judgment. The Court finds that 54.5 hours is a reasonable amount of time and that $350.00 per hour is a reasonable hourly rate for an attorney with similar qualifications and experience.

Plaintiff also requests costs be awarded in the amount of $1,259.04. This amount includes $85.84 for mileage, $60.00 for the service of process fee, $1,106.25 for the mediation fee, and $6.95 for a certified letter to Larry Harmon. The Court finds this request is also reasonable and will award Plaintiff $1,259.04 in costs.

## V. CONCLUSION

In summary, this Court concludes that Defendants are liable to Plaintiff on each of the claims in her Complaint further finds that Plaintiff is entitled to recover damages from Defendants as follows: (a) back wages in the amount of **$53,029.00** from Defendants, jointly and severally; (b) unpaid overtime and liquidated damages in the amount of **$11,800.00**, from Defendants jointly

and severally; (c) compensatory and punitive damages on Plaintiff's sexual harassment claim under Title VII of the Civil Rights Act of 1964 in the amount of **$50,000.00** from Defendant Lazy T; (d) compensatory and punitive damages on Plaintiff's assault and battery claims in the amount of **$25,000.00** from Defendant Harmon; and (e) compensatory and punitive damages in the amount of **$125,000.00** on her claim for intentional infliction of emotional distress from Defendant Harmon. Plaintiff is also entitled to attorney's fees in the amount of **$19,075** and **$1,259.04** in costs.

## ORDER AND JUDGMENT

**IT IS THEREFORE ORDERED AND ADJUDGED** that Plaintiff's Motion for Default Final Judgment, (ECF No. 14), is **GRANTED**. The Court hereby enters a Default Judgment in favor of Plaintiff, Angela N. Allen, as set forth above.

**SO ORDERED.**

Signed: December 30, 2020

Kenneth D. Bell
United States District Judge